# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ROSS J. SEGREAVES,

      Plaintiff,

      v.

MR. MOSHER, *et al.*,

      Defendants.

CIVIL ACTION NO. 1:24-cv-02151

(SAPORITO, J.)

## MEMORANDUM

Plaintiff Ross J. Segreaves, presently incarcerated at SCI-Phoenix, has filed a second amended complaint (Doc. 19)[1] against eight defendants affiliated with SCI-Waymart, alleging retaliation, excessive force, interference with his mail, and unconstitutional conditions of confinement. He will be permitted to proceed on an excessive force claim against one defendant, Mr. Mosher, and all other claims will be dismissed. His request for appointment of counsel will be denied without prejudice.

## I.  BACKGROUND

Segreaves's complaint describes a series of incidents he attributes

---

[1] The Court ordered Segreaves to refile his amended complaint (Doc. 14) because it was unsigned.

to retaliation for keeping a journal that documented officer abuse of inmates and for filing prison grievances. Although the complaint is difficult to follow because the timeline and the relationship among these events is unclear, the Court construes it liberally, as required of a *pro se* pleading. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

At some unspecified time, Segreaves filed a grievance against a sergeant, Mr. Chearney, for "ignoring [Segreaves's] dangerously high blood pressure." Segreaves's cell was then searched "under a bogus excuse," namely, that he possessed the social security numbers of several inmates. He was placed in "modified segregation . . . beyond the permissible investigative search period." During the search, officer Ms. McAndrews discovered Segreaves's personal journal, in which he had documented "ethical violations and . . . abuse of inmates by officers." Other officers allegedly became aware of the journal, including Mrs. Kovalesky, who became "disgruntled" with Segreaves. Another sergeant, Mr. Leonard, allegedly said: "[T]he next time that you decide to write in your journal, don't use officer names." Although there were no social security numbers in the journal, it was confiscated by unnamed officers

and never returned to him.[2]

After being moved to another unit of SCI-Waymart, Segreaves tried to mail a letter to the Lewisburg Prison Project to report inmate abuse by officers. Mrs. Kovalesky said: "I need to go send an email to security before that goes out." Segreaves infers that "security" referred to Security Captain Mr. Kosakowski. Segreaves alleges that Kovalesky "obstructed" the letter, although it is not clear if this refers to the alleged email or some other, unspecified action. After this incident, Kovalesky yelled at Segreaves and another inmate for turning off a portable fan. Segreaves filed grievances against Kovalesky for the mailing and portable fan incidents.[3]

On May 8, 2022, an unnamed officer ordered Segreaves to pack his belongings to be relocated to another unit. Segreaves refused the order,

---

[2] McAndrews and Leonard and not named as defendants, and Segreaves states that he is not seeking relief for denial of medical care or improper segregation during the search period. Rather, in his words, he describes these incidents to "paint a picture" of retaliation.

[3] Two other officers, Mr. Berlew and Mr. Setrik allegedly conducted "excessive searches" of Segreaves, which Segreaves attributes to retaliation because "they are also close coworkers" of Kovalesky. However, Segreaves explicitly declines any claim against Berlew or Setrik.

believing that he was being asked to move out of retaliation. The officer threatened that Segreaves would be placed in the "RHU/Hole" if he did not comply. Segreaves ultimately agreed to enter an area he refers to as the "vestibule." Defendant Mr. Mosher ordered him to the wall for a pat-down search. Segreaves initially consented, but then "panicked" that he would be taken to the RHU or the Hole. Segreaves "turned off of the wall" and called out to a psychologist for assistance. "The next thing [he] knew," he was pepper-sprayed and "thrown to the ground." The pepper spray was deployed to his eyes and genitalia, and Segreaves was "flailing around suffering a near fatal asthma attack." Mosher allegedly kneed Segreaves's rib cage "with such force that [Segreaves] was in pain," telling him to "stop resisting." Segreaves suffered bruising, pain, swelling, and "possible" hairline fractures to multiple ribs.

As a result of this confrontation with Mosher, Segreaves was sent to the RHU for 98 days for "assault on an officer." He alleges that unnamed officers on the scene conspired to falsely accuse him of assault. While in the RHU, Segreaves allegedly suffered sleep deprivation caused by other inmates' noise, a radio that was played from 9:00-10:00 am until at least 10:00 pm each day, and the nightlights in the RHU, which "are

not true nightlights and [] glare directly over your head."

Throughout his incarceration at SCI-Waymart, Segreaves had therapy sessions in which he discussed his mental health and other sensitive personal matters. Guards were stationed in the room during these sessions, which Segreaves alleges is a violation of privacy that does not occur at other state prisons. He alleges that "[w]hat ensued was gossip among the guards" about his sessions, but he does not identify the guards involved or what specifically was said.

Finally, he alleges that Mr. Kosakowski, and/or "mail-ladies" Ms. Faye and Ms. Peggy, "obstructed" three pieces of certified legal mail and one piece of certified personal mail. Although these mailings were properly placed in the USPS mailbox for outgoing mail by other officers, Segreaves's search of the tracking numbers on the USPS website indicates that the mailings were "undelivered" or "not yet in system." Two of the legal mailings were addressed to his attorney "to litigate [his] case for release from state prison."

Segreaves seeks monetary damages based on the following prison conditions and resultant injuries: his bruised or fractured ribs from the confrontation with Mosher; "98 days illegal incarceration in the RHU"

and the excessive noise and lighting therein; eight "HIPAA[4] violations";
and the four allegedly obstructed mailings.

## II.  LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil
complaint in which a prisoner seeks redress from a governmental entity
or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a);
*James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The
Court must dismiss the complaint if it is "frivolous" or "fails to state a
claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The
Court has a similar obligation with respect to actions brought *in forma
pauperis* and actions concerning prison conditions. *See* 28 U.S.C. §
1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see
generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D.
Pa. 2008) (summarizing prisoner litigation screening procedures and
standards).

The legal standard for dismissing a complaint for failure to state a
claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as

---

[4] The Health Insurance Portability and Accountability Act, Pub.L.
No. 104–191, 110 Stat.1936 (1996), establishes standards to protect
sensitive health information from disclosure.

that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). The Court also disregards allegations made only in a prior version of the complaint. *See*

*Argentina v. Gillette*, 778 F. Appx 173, 175 n.3 (3d Cir. 2019).

## III.    DISCUSSION

### A. Section 1983

Segreaves seeks damages under 42 U.S.C. § 1983. Section 1983

provides in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must

establish that the defendants, acting under color of state law, deprived

the plaintiff of a right secured by the United States Constitution. *Mark*

*v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid

dismissal for failure to state a claim, a civil rights complaint must state

the conduct, time, place, and persons responsible for the alleged

violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further,

"[c]ivil rights claims cannot be premised on a theory of *respondeat*

*superior*. Rather, each named defendant must be shown . . . to have been

personally involved in the events or occurrences which underlie a claim."

*Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

In this case, Segreaves has sued Mark Wahl, the Superintendent of SCI-Waymart, and "Mr. Grillo," whom the Court infers to be a deputy superintendent. However, these defendants' supervisory roles are not themselves sufficient to establish personal responsibility under Section 1983. Segreaves alleges that Wahl, specifically, was "aware of the journal fiasco," that they "discussed most of the issues [Segreaves] grieved," and that Wahl reviewed video footage related to the May 2022 assault. However, Wahl's involvement in responding to Segreaves's grievances, and the allegation that he "discussed" certain incidents with Segreaves after the fact, does not show "personal direction or [] actual knowledge and acquiescence" in the underlying violations for Section 1983 purposes. *See Rode*, 845 F.2d at 1207; *Brooks v. Beard*, 167 F. App'x 923, 925 (3d

Cir. 2006) ("Although the complaint alleges that [prison administrators] responded inappropriately to Brooks's later-filed grievances . . . these allegations do not establish [their] involvement in the treatment itself."). Accordingly, the Court's analysis is directed to the remaining six defendants: Mosher, Kovalesky, Obelinus, Kosakowski, Peggy, and Faye.

### B. Excessive Force Claim

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). An excessive force claim turns on whether the force in question "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Banks v. Meck*, 531 F. App'x 205, 207 (3d Cir. 2013) (quoting *Hudson*, 503 U.S. at 7).

Segreaves plausibly alleges an excessive force claim against Mosher. His allegations are somewhat ambiguous in that he claims to have been subdued after being pinned to the ground, but also that he was "flailing around," which he attributes to an asthma attack. Nonetheless, his complaint supports a plausible inference that Mosher knowingly used more force than necessary to ensure compliance, by kneeing him in the

back forcefully enough to bruise or fracture his ribs after he had already been pinned to the ground.[5]

### C. RHU Claims

Next, Segreaves alleges that he was "illegally incarcerated" in the RHU after his confrontation with Mosher, based on fabricated accounts by officer witnesses.[6] The Court construes this as a Fourteenth Amendment due process claim. However, "[d]ue process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"[7] *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515

---

[5] The complaint does not directly allege that Mosher was the officer who pepper-sprayed him or tackled him to the ground. Because the complaint sufficiently states an excessive force claim distinct from the use of pepper spray and the initial tackle, the Court does not consider whether these allegations could support a claim against Mosher.

[6] Segreaves further alleges that his incarceration "was done in retaliation under the guise of 'quarantine'." Nothing else in the complaint suggests that he was "quarantined" for any kind of medical reason, whether genuine or pretextual. A fair reading of the complaint as a whole indicates that he was sent to the RHU as a disciplinary measure.

[7] The allegation of falsified evidence, including misconduct reports, would not itself show a due process violation. *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002).

U.S. 472, 484 (1995)). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486); *see Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) ("[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest.").

Here, Segreaves alleges he was sentenced to 98 days in the RHU. Courts have consistently declined to recognize sentences of this type as "atypical" deprivations that implicate a liberty interest. *See, e.g.*, *Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (15 days of disciplinary segregation, followed by 120 days of administrative segregation); *Fann v. Salamon*, No. 4:23-CV-01787, 2024 WL 2848318, at *5 (M.D. Pa. June 5, 2024) (120 days of disciplinary segregation); *Lawrence v. Foura*, No. 1:23-CV-00480, 2023 WL 5751410, at *5 (M.D. Pa. Sept. 6, 2023) (listing cases). Segreaves alleges that he suffered sleep deprivation in the RHU from excessive lighting and noise. However, the conditions he describes, although unpleasant, do not appear atypical of prison life such that they

would implicate a Fourteenth Amendment liberty interest (or sustain an Eighth Amendment claim for unconstitutional conditions of confinement).[8]

## D. HIPAA/Privacy Claims

Next, Segreaves asserts what he describes as HIPAA claims against unnamed officers for revealing the content of his therapy sessions. However, HIPAA does not provide individuals with a private right of action. *See Holland v. Weller*, No. 3:24-CV-2201, 2025 WL 308127, at *4 n.4 (M.D. Pa. Jan. 27, 2025) (citing, *e.g.*, *Beckett v. Grant*, No. 19-3717, 2022 WL 485221, at *3 (3d Cir. Feb. 17, 2022)). Inmates' right to private medical information is guaranteed by the Fourteenth Amendment. *See Doe v. Delie*, 257 F.3d 309, 316-17 (3d Cir. 2001). That right is "subject to substantial restrictions and limitations in order for correctional officials

---

[8] *See, e.g.*, *Jackson v. Unit Manager Knapp*, No. 3:22-CV-0138, 2024 WL 4630195, at *9 (M.D. Pa. Oct. 30, 2024) (rejecting claim premised on sleep deprivation from noise from RHU inmates); *Sims v. Piazza*, No. 3:09-CV-0033, 2011 WL 3664469, at *8-10 (M.D. Pa. Jan. 31, 2011) (overhead nightlight in the RHU was permissible based on legitimate security concerns), report and recommendation adopted, 2011 WL 3664797 (M.D. Pa. Aug. 19, 2011); *Robinson v. Danberg*, 673 F. App'x 205, 214 (3d Cir. 2016) (noise from televisions and radios, although potentially irritating, "cannot fairly be said to inflict cruel and unusual punishment") (quoting *Peterkin v. Jeffes*, 855 F.2d 1021, 1026-28 (3d Cir. 1988)).

to achieve legitimate correctional goals and maintain institutional security." *Id.* at 317. Further, the right applies only "in the case of an unusual medical condition which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread through rumor or gossip." *Medina v. Little*, 2023 WL 8027154, at *12 (E.D. Pa. Nov. 20, 2023) (citing *Smith v. Hayman*, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012), aff'd, 489 Fed. Appx. 544 (3d Cir. 2012)); *see also Betrand v. Dep't of Corr.*, No. 4:07-CV-859, 2008 WL 744817, at *4 (M.D. Pa. Mar. 18, 2008) ("the constitutional right to non-disclosure appears to be limited to HIV, AIDS, mental health, matters of an embarrassing or humiliating nature, or matters in which the person had a legitimate expectation of confidentiality") (citation omitted).

In this case, assuming that the content of Segreaves's sessions triggered his right to medical privacy, he does not explain how any named defendant was personally involved in the disclosure of the sensitive information. Further, the presence of a prison guard in the room during his sessions does not itself show a constitutional violation given the limitations on the right described above. *See Delie*, 257 F.3d at 317.

### E. Mail Claims

Next, Segreaves asserts claims based on four allegedly mishandled mailings. A prisoner has a First Amendment right to send and receive mail, subject to legitimate penological restrictions. *See Nixon v. Sec'y Pennsylvania Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012); *Jones v. Brown*, 461 F.3d 353, 358-59 (3d Cir. 2006). However, mere negligence in handling mail does not state a claim under Section 1983, and isolated instances of mishandled mail do not state a claim unless they suggest a "pattern or practice" of mishandled mail. *See, e.g., Castillo v. All Jane/John Does of Deputized Postal Officers*, No. 3:15-CV-00910, 2016 WL 6089853, at *5 (M.D. Pa. Sept. 20, 2016); *Booze v. Wetzel*, No. 1:13-CV-2139, 2016 WL 4191041, at *4 (M.D. Pa. Apr. 5, 2016) (listing cases).

Segreaves's description of his mail issues is difficult to follow. He alleges that he paid for one personal mailing and three legal mailings to be sent via certified mail. These mailings were placed in a USPS mailbox by officers Mr. Jacob and Mr. Mills, which officers routinely do "as a courtesy" to inmates. The Court infers that Segreaves claims no wrongdoing by Jacob or Mills. The personal mailing was allegedly "processed" by Obelinus, although it is unclear what the processing

entailed or whether or how the processing was improper. Segreaves does not say who "processed" the legal mailings. The upshot is that while Segreaves paid for certified mail, his review of USPS records indicated that the mailings were not delivered. However, even accounting for the fact that Segreaves does not know what happened to the mailings, he has not pled facts raising an inference that the relevant defendants (whom he identifies as Kosakowski and "mail-ladies" Peggy and Faye) were personally involved in obstructing the mailings. *See, e.g., Flynn v. Dep't of Corr.*, No. 3:12-CV-1535, 2015 WL 434997, at *4-5 (M.D. Pa. Feb. 3, 2015) ("general allegations" of withheld mail did not support an inference of personal involvement by a mail room "inspector"). Even if obstruction could be inferred from Kovalesky allegedly "send[ing] an email" to Kosakowski about the prior mailing to the Lewisburg Prison Project, that single incident would not support a claim. *See Nixon*, 501 F. App'x at 178 (plaintiff's "claim alleging a single, isolated interference with his personal mail" was insufficient).[9]

---

[9] Nor does Segreaves state a claim for denial of access to the courts based on the statement that his mailings were sent "to litigate [his] case for release from state prison." To state such a claim, a plaintiff would have to show (1) that he suffered an "actual injury," *i.e.*, that he lost a
*(continued on next page)*

## F. Retaliation

Although Segreaves attributes most of the events in his complaint to "retaliation" for his grievances and journal, it is unclear whether he intended to separately assert claims of retaliation in violation of the First Amendment. Regardless, the complaint does not state such a claim. To state a *prima facie* case of First Amendment retaliation, a plaintiff must show that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (citations and quotations omitted). Typically, the plaintiff must show "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," or "a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424

---

chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that he has no other "remedy that may be awarded as recompense" for the lost claim. *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

(3d Cir. 2016).

Here, although Segreaves's grievances are protected activity, he has not alleged facts indicating that the cell transfer, the confrontation with Horton, the conditions in the RHU, or the four lost mailings were in any way related to his grievances.[10] Although he repeatedly labels defendants' actions as "retaliation," his own speculation about their motives, without facts showing any plausible relationship between these incidents and his grievances, is insufficient. *See, e.g., Butler v. Kauffman*, No. 4:19-CV-02171, 2023 WL 2601918, at *3 (M.D. Pa. Mar. 22, 2023).

## IV.    APPOINTMENT OF COUNSEL

Segreaves requests that the Court appoint him counsel, with no supporting explanation. (Doc. 17). A prisoner has no constitutional or statutory right to appointed counsel in a civil case. *Parham v. Johnson*,

---

[10] Segreaves vaguely alleges that "word got around" about his journal, but even assuming his journal was protected activity, this is insufficient to suggest causation, particularly since there is no indication that any defendant was mentioned in the journal. *See, e.g., Nunez v. Wetzel*, No. 1:21-CV-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (listing dismissals of retaliation claims where the alleged retaliator was not the target of the protected activity). Kovalesky allegedly yelled at him to turn off a fan at some point after he filed a grievance against her, but verbal harassment is not an "adverse action" for retaliation purposes. *See, e.g., Burgos v. Canino*, 358 F. App'x 302, 306-07 (3d Cir. 2009).

126 F.3d 454, 456-57 (3d Cir. 1997). Under the *in forma pauperis* statute, however, a federal court may request that an attorney represent an indigent person on a pro bono basis. *See* 28 U.S.C. § 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). The court's appointment of volunteer counsel is discretionary and must be made on a case-by-case basis. *Tabron*, 6 F.3d at 157-58.

The appointment of pro bono counsel to represent an indigent civil litigant "is usually only granted upon a showing of special circumstances indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984). "As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." *Montgomery*, 294 F.3d at 498-99. If the plaintiff overcomes this threshold hurdle, the court considers the following factors:

> 1. the plaintiff's ability to present his or her own case;
>
> 2. the difficulty of the particular legal issues;

3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

4. the plaintiff's capacity to retain counsel on his or her own behalf;

5. the extent to which a case is likely to turn on credibility determinations, and;

6. whether the case will require testimony from expert witnesses.

*Id.* at 499 (citing *Tabron*, 6 F.3d at 155-57).

Assuming for purposes of the motion that Segreaves's claim against Mosher has arguable merit in fact and law, the Court finds that appointment of volunteer counsel is not warranted at this stage. Thus far, he appears able to undertake the relevant factual investigation and present his case. It is not yet clear whether the case will involve complex issues, credibility determinations, or expert testimony. To the extent these details become apparent later in the litigation, the Court will consider a renewed motion for appointment of counsel. *See Woodham v. Sayre Borough Police Dep't*, 191 F. App'x 111, 116 (3d Cir. 2006). However, at this early stage, there is no indication that this is a "special circumstance" justifying appointed counsel. *Smith-Bey*, 741 F.2d at 26.

## V.  CONCLUSION

Segreaves will be permitted to proceed on an Eighth Amendment excessive force claim against Mr. Mosher, and all other claims will be dismissed. An appropriate order follows.

Dated: April 29, 2025                    *s/Joseph F. Saporito, Jr.*
                                        JOSEPH F. SAPORITO, JR.
                                        United States District Judge