UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ROSS J. SEGREAVES,

       Plaintiff,

       v.

MR. MOSHER,

       Defendant.

CIVIL ACTION NO. 1:24-cv-02151

(SAPORITO, J.)

## ORDER

Ross J. Segreaves, a prisoner proceeding *pro se*, asserts an Eighth Amendment excessive force claim against defendant Mr. Mosher, a correctional officer at SCI-Waymart. Mosher has moved for summary judgment (Doc. 35), and Segreaves has not responded despite an extension of the deadline to do so. Because Segreaves did not exhaust administrative remedies and his claim is time-barred, the Court grants summary judgment to Mosher.

I. BACKGROUND

As relevant to this claim, the operative complaint (Doc. 19) alleges as follows: On May 8, 2022, at SCI-Waymart, an unnamed officer ordered Segreaves to change cells, and told Segreaves that if he refused, he would be sent to segregated housing in the "RHU/Hole." Prior to the move,

defendant Mosher ordered Segreaves to the wall for a pat down search. Segreaves initially consented, but then "panicked" that he would be taken to the RHU or the Hole. Segreaves "turned off of the wall" and called out to a psychologist for assistance. "The next thing [he] knew," he was pepper-sprayed and "thrown to the ground." The pepper spray was deployed to his eyes and genitalia, and Segreaves was "flailing around suffering a near fatal asthma attack." Mosher allegedly kneed Segreaves's rib cage "with such force that [Segreaves] was in pain," telling him to "stop resisting." Segreaves allegedly suffered bruising, pain, swelling, and "possible" hairline fractures to multiple ribs.

Segreaves was permitted to proceed on an Eighth Amendment excessive force claim against Mosher.[1] On December 17, 2025, after discovery closed, Mosher moved for summary judgment. When Segreaves failed to respond within the time allotted, the Court issued an order extending the response deadline to February 20, 2026, and warning that the motion would be deemed unopposed if he did not respond. (Doc. 38). Segreaves has not responded.

---

[1] Upon screening of the operative complaint pursuant to 28 U.S.C. § 1915A, a series of claims against other defendants were dismissed. *See* (Docs. 20, 21).

## II.   LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to

the jury." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Although this motion is unopposed, the Court must still review the record to establish "that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990). Because Segreaves has not responded to the motion, all of Mosher's properly supported statements of fact are deemed admitted. *See* M.D. Pa. L.R. 56.1.

- 4 -

### III.   MATERIAL FACTS

The summary judgment record indicates as follows: On May 9, 2022, Segreaves was being moved to a different housing unit at SCI-Waymart. According to the prison's written report of the incident in question, Segreaves "became agitated" and asked to see a psychologist. Defendant Mosher attempted to conduct a pat-down search of Segreaves before escorting him to the psychologist's office. Mosher ordered Segreaves to put his hands against a wall, but "Segreaves swung his elbow back[,] striking [Mosher] in the shoulder . . . Mosher took him to the floor, but [Segreaves] was continuing to resist." Another officer on the scene deployed OC spray against Segreaves, and a group of four officers ultimately restrained him. (Doc. 36-2).

The Pennsylvania Department of Corrections ("DOC") provides a three-part procedure for inmate grievances: initial review by a Grievance Officer, appeal to the Facility Manager, and final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). Under the DOC's grievance policy, an inmate must submit the grievance within 15 working days after the event in dispute, but the inmate can request a "reasonable extension of time" to do so. An extension may be granted for "any . . .

reason the Facility Grievance Coordinator/designee deems appropriate." *See* DC-ADM 804, §§ 1(A)(8), 1(C)(2).[2]

An inmate who files five grievances within 30 days that are deemed frivolous can be placed on a "grievance restriction." An inmate on a grievance restriction is limited to one grievance per 15 working days for a period not to exceed 90 days. The grievance restriction period begins "on the date of the written notice to the inmate of the grievance restriction." *See* DC-ADM 804, § 3(A).

On May 16, 2022, Segreaves was placed on a grievance restriction, effective as of that date. (Doc. 36-5). On the same day, he filed[3] Grievance No. 980573, in which he complained about the May 9 altercation. The grievance was rejected based on his grievance restriction status, because

---

[2] Although not attached to Mosher's motion, we take judicial notice of DC-ADM 804, the DOC's publicly available grievance policy. *See, e.g., Gibson v. SCI Coal Twp., Med. Dep't*, No. 1:22-CV-00618, 2026 WL 896220, at *10 n.9 (M.D. Pa. Mar. 31, 2026).

[3] The grievance itself does not clearly indicate when it was "filed." The grievance is marked as "received" on May 16, 2022, and a DOC employee's declaration indicates that she collected the grievance on that date. *See* (Docs. 36-3, 36-4). Given Segreaves's failure to respond, we accept as undisputed that his grievance was submitted on May 16, during the period that his grievance restriction was in effect. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1.

Segreaves had filed a grievance on May 11. *See* (Doc. 36-3 at 2). Segreaves did not appeal the rejection, and there is no indication that he sought an extension of time in which to grieve the May 9 incident. *See* (Doc. 36-6).

## IV.   DISCUSSION

Mosher is entitled to summary judgment because Segreaves did not properly exhaust administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Therefore, exhaustion within the DOC generally requires appeal to SOIGA, the third and final step of the process. *See Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004). The fact that a prisoner is on a grievance restriction does not excuse exhaustion; if the grievance restriction results in his inability to file a timely grievance, "a prisoner must request permission to file an untimely grievance . . . just as he must pursue the grievance itself." *Talley*

- 7 -

*v. Clark*, 111 F.4th 255, 263 (3d Cir. 2024); *Fortune v. Bitner*, 285 F. App'x 947, 951 (3d Cir. 2008).

In this case, because Segreaves filed an unrelated grievance on May 11, his grievance restriction left him unable to file a timely grievance about the May 9 incident. However, he did not appeal the rejection of his grievance about the May 9 incident, and there is no indication that he sought an extension of time or made any other attempt to grieve the issue. Although the exhaustion requirement may appear harsh in this circumstance[4], to excuse it "would allow frivolous filers to make an end-run around the grievance system: simply file enough frivolous grievances to be put on grievance restriction and then, instead of being limited to one grievance every 15 working days that can be pursued through all three levels of review, the restricted inmate no longer has to properly exhaust any claims—just file the initial grievance, wait for its inevitable

---

[4] We have considered whether the grievance process could be deemed "unavailable" because it was a "dead end" or opaque, *see Ross v. Blake*, 578 U.S. 632, 643-44 (2016), given that Segreaves would have had to request an extension from the same Grievance Coordinator who had explicitly refused to consider that grievance. However, nothing in the Grievance Coordinator's response to Segreaves foreclosed the possibility of an extension. *See* (Doc. 36-3 at 2). Moreover, there is no "futility" exception to the PLRA's exhaustion requirement. *See Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000).

rejection, and then head to federal court." *Nelson v. Taylor*, No. 4:23-CV-00273, 2025 WL 1085222, at \*5 (M.D. Pa. Apr. 10, 2025), aff'd, No. 25-1745, 2026 WL 1875112 (3d Cir. June 30, 2026); *see also Simmons v. Gilmore*, No. 2:17-CV-00996, 2021 WL 1215773, at \*12 (W.D. Pa. Mar. 31, 2021).

Moreover, Segreaves's claim would be subject to summary judgment on other grounds. He did not file a federal complaint about this May 9, 2022, incident until August 15, 2024, *see* (Doc. 2). Therefore, he did not bring his claim within the two-year statute of limitations applicable to Section 1983 claims, even accounting for tolling during his aborted attempt to use the grievance process. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing 42 Pa.C.S. § 5524(2)). Further, the limited record does not support an inference that Mosher violated Segreaves's Eighth Amendment rights. There is no evidence that any use of force by Mosher went beyond "a good faith effort to maintain or restore discipline," *see Hudson v. McMillian*, 503 U.S. 1, 6 (1992), particularly given the undisputed evidence that Segreaves "swung his elbow back . . . [and] was continuing to resist" during the attempted pat-down search.

- 9 -

## V.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT**:

1.    Mosher's motion for summary judgment (Doc. 35) is **GRANTED**. The Clerk is directed to enter **JUDGMENT** in favor of Mosher and against Segreaves.

2.    The Clerk is directed to mark this case as **CLOSED**.

Dated: July 21, 2026                       *s/Joseph F. Saporito, Jr.*
                                           JOSEPH F. SAPORITO, JR.
                                           United States District Judge